**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTT DESROSIERS,<br><br>                                    Plaintiff,<br><br>        v.<br><br>MILDRED GARCIA, *et al.*,<br><br>                                    Defendants. | Case No. 26-cv-02111-BAS-DEB<br><br>**ORDER:**<br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (ECF No. 8); AND**<br><br>**(2) GRANTING IN PART, DISMISSING IN PART COMPLAINT WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)** |

For the reasons discussed below, the Court **GRANTS IN PART** Plaintiff's amended IFP motion. (ECF No. 8.)  The Court also **GRANTS IN PART** and **DISMISSES IN PART, WITHOUT PREJUDICE** Plaintiff's complaint. (ECF No. 1.)  For the dismissed claims, Plaintiff is **GRANTED LEAVE** to file amended claims on or before **June 9, 2026**.

I.      **INTRODUCTION**

Plaintiff Scott Desrosiers ("Plaintiff"), a detainee proceeding *pro se*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, along with a motion to proceed *in forma pauperis* ("IFP").  (*See* ECF Nos. 1, 2.)  The Court denied Plaintiff's initial IFP motion.

26cv2111

(ECF No. 5.)  Plaintiff filed an amended IFP motion.  (ECF No. 8.)

In the Complaint, Plaintiff alleges his constitutional rights were violated when San Diego State University falsified a government investigation and terminated his employment after identifying him as a threat after the investigation.  (ECF No. 1.)

## II.   MOTION TO PROCEED IFP

Under 28 U.S.C. § 1915, a litigant who because of indigency is unable to pay the required fees or security to commence a legal action may petition the court to proceed without making such payment.  The determination of indigency falls within the district court's discretion.  *Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991) (holding that "Section 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement of indigency"), *rev'd on other grounds*, 506 U.S. 194 (1993).  It is well-settled that a party need not be completely destitute to proceed IFP.  *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948).

To satisfy the requirements of 28 U.S.C. § 1915(a), "an affidavit [of poverty] is sufficient which states that one cannot because of his poverty pay or give security for costs . . . and still be able to provide himself and dependents with the necessities of life."  *Id.* at 339.  At the same time, however, "the same even-handed care must be employed to assure that federal funds are not squandered to underwrite, at public expense . . . the remonstrances of a suitor who is financially able, in whole or in material part, to pull his own oar."  *Temple v. Ellerthorpe*, 586 F. Supp. 848, 850 (D.R.I. 1984).

District courts, therefore, tend to reject IFP applications where the applicant can pay the filing fee with acceptable sacrifice to other expenses.  *See, e.g., Stehouwer v. Hennessey*, 841 F. Supp. 316, 321 (N.D. Cal. 1994) (finding that the district court did not abuse its discretion in requiring a partial fee payment from a prisoner who had a $14.61 monthly salary and who received $110 per month from family), *vacated in part on other grounds by Olivares v. Marshall*, 59 F.3d 109 (9th Cir. 1995).  Moreover, "*in forma pauperis* status may be acquired and lost during the course of litigation."  *Wilson v. Dir. of*

*Div. of Adult Insts.*, No. CIV S-06-0791, 2009 WL 311150, at *2 (E.D. Cal. Feb. 9, 2009) (citing *Stehouwer*, 841 F. Supp. at 321); *see also Allen v. Kelly*, 1995 WL 396860, at *2 (N.D. Cal. June 29, 1995) (holding that a plaintiff who was initially permitted to proceed *in forma pauperis* should be required to pay his $120 filing fee out of a $900 settlement). Finally, the facts as to the affiant's poverty must be stated "with some particularity, definiteness, and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981).

Here, although Plaintiff Scott Desrosiers represents that his average monthly income for the past twelve months is $2,900 per month, he states that his current income is approximately $659 per month. (ECF No. 8 at 2–3.) Plaintiff also represents that his total monthly expenses are $2,558 per month. (*Id*. at 4.)

Since Plaintiff's current monthly salary is significantly below his monthly expenses and he represents he has no significant property assets (*id*. at 4), Plaintiff's amended IFP motion is **GRANTED**. (ECF No. 8.)

## III.    SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

### A.    Legal Standard

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-

26cv2111

harmed me accusation[s]" fall short of meeting this plausibility standard.  *Id.*

## B. Factual Background

Plaintiff Scott Desrosiers is a former employee of San Diego State University ("SDSU").  (ECF No. 1 ¶ 4.)  While working as an "Electro-Mechanical Tech 2," Plaintiff was "tasked with maintaining electro-mechanical equipment in laboratory facilities and classrooms serving the Doctor of Physical Therapy program, including the Bhutani Lab and related spaces in the PSF A building complex."  (*Id.* ¶ 16.)  While employed, Plaintiff observed and documented alleged California Division of Occupational Safety and Health ("CalOSHA") safety code violations in his assigned laboratory facilities and classrooms. (*Id.* ¶ 19.)

As best at the Court can discern, Plaintiff alleges facts against each Defendant as follows:

### 1. SDSU and California State University ("CSU") Defendants (collectively, "University Defendants")

Kirk Campbell ("Campbell") is a supervisor at SDSU, who allegedly told Plaintiff not to safety concerns with students, coworkers, or administrators.  Campbell told Plaintiff to submit all safety complaints exclusively to Campbell's "leads" who were required to sign off before any complaint could be submitted.  (*Id.* ¶ 27.)  Campbell, along with Defendants Terry Williams and Nathan Doherty (below), allegedly participated in placing Plaintiff on administrative leave on March 21, 2024, less than twenty-four hours after Plaintiff threatened a lawsuit.  (*Id.* ¶ 71.)

Defendant Terry Williams ("Williams") is an Employee Resource Manager at SDSU.  (*Id.* ¶ 8.)  Williams, along with Defendant Nathan Doherty, reviewed Plaintiff's six-month evaluation at a meeting on March 21, 2024, with Plaintiff.  (*Id.* ¶¶ 37–38.)  This evaluation contained adverse marks primarily tied to Plaintiff's safety advocacy.  (*Id.* ¶¶ 37–38.)  Plaintiff reiterated his safety concerns at the meeting and said he would file a civil rights action if SDSU did not correct the violations and the retaliatory evaluation.  (*Id.* ¶¶ 38–39.)  Plaintiff was placed on administrative leave 24 hours later.  (*Id.*)

Defendant Nathan Doherty ("Doherty") is a Labor Relations Manager at SDSU. (*Id*. ¶ 8.) He participated in the evaluation meeting discussed above. In addition, on the same day Plaintiff was placed on administrative leave, Doherty met with Plaintiff to discuss an allegation that Plaintiff had threatened a co-worker with a deadly weapon (a multi-tool). (*Id*. ¶¶ 41–46.) Doherty allegedly compelled Plaintiff to respond to the deadly weapon claim under threat of termination. (*Id*. ¶ 44.)

Defendant Jessica Rentto ("Rentto") is Associate Vice President of Business and Finance at SDSU, which allegedly carries direct institutional responsibility for campus health and safety. (*Id*. ¶¶ 13, 33.) The Chancellor's Office allegedly appointed Rentto as the investigator of Plaintiff's whistleblower complaint. (*Id*. ¶ 29.) Plaintiff met with Rentto and provided a full account of safety violations, to which Rentto responded she would look into them. (*Id*. ¶ 32.)

Defendant Mildred Garcia ("Garcia") is the Chancellor of the California State University system (*id*. ¶ 5), and Adela De la Torre ("De la Torre") is the President of SDSU (*id*. ¶ 6). Without more detail, Plaintiff alleges Garcia and De la Torre are liable in their individual capacities to the extent they personally participated in, directed, ratified, or knowingly failed to stop the unconstitutional acts alleged. (*Id*. ¶ 68.) They are also sued in their official capacity for inaccurate CSU and SDSU personnel and employment records. (*Id*. ¶ 98.)

**2.    California Division of Occupational Safety and Health ("CalOSHA") Defendants (collectively, "CalOSHA Defendants")**

Defendant Mark Katz ("Katz") is a CalOSHA Associate Safety Engineer who conducted an investigation into Plaintiff's formal CalOSHA complaint. (*Id*. ¶¶ 11, 47). Plaintiff claims Katz disclosed Plaintiff's identity as complainant in an ex parte opening conference with SDSU representatives. (*Id*. ¶ 47.) SDSU terminated Plaintiff's employment several days after Plaintiff was identified as the safety complainant. (*Id*. ¶ 48.) By departing the April without conducting an inspection, Katz allegedly had given

26cv2111

SDSU advanced notice the inspection scope so that when he returned two weeks later, he entered an official conclusion of "no evidence of violations." (*Id*. ¶¶ 56–57, 75.)

Defendant Tim Decker ("Decker") is the CalOSHA Acting District Manager allegedly responsible for oversight of district-level investigations like the one engendered by Plaintiff. (*Id*. ¶ 12) Decker allegedly approved of Katz's official conclusion of "no evidence of violations" and "supervised both the initial" and "the follow-up enforcement inspection." (*Id*. ¶¶ 57, 65.)

Defendant Debra Lee ("Lee") is the Chief of the California Division of Occupational Safety and Health ("CalOSHA"). (*Id*. ¶ 10.)

Defendant Brandon Hart ("Hart") is the CalOSHA Regional Manager allegedly responsible for the oversight of district-level investigations like the one reported by Plaintiff. (*Id*. ¶ 14.) Hart allegedly denied Plaintiff an informal review and written statement of reasons for the final disposition of his complaint. (*Id*. ¶ 62.)

**C.   Count 1: 42 U.S.C. § 1983; First Amendment Retaliation Against Defendants Garcia, De la Torre, Campbell, Williams, Doherty, Rentto, Katz, and Decker in Their Individual Capacities**

To state a claim under § 1983 for government retaliation against Plaintiff's exercise of his First Amendment rights, Plaintiff must allege that:

(1) Plaintiff engaged in constitutionally protected activity;

(2) Defendants' actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity; and

(3) the protected activity was a substantial motivating factor in the defendant's conduct—*i.e*., that there was a nexus between the defendant's actions and an intent to chill speech.

*Arizona Students' Ass'n v. Arizona Bd. of Regents,* 824 F.3d 858, 867 (9th Cir. 2016).

Specifically, "[i]n order to state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her

26cv2111

speech was a 'substantial or motivating' factor for the adverse employment action." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). An "adverse employment action" is an act that is reasonably likely to deter employees from engaging in constitutionally protected speech, including firing current and former government employees for their public disclosure of health and safety hazards. *Id*. at 973–77.

Here, Plaintiff claims the above Defendants in the title of this subsection had retaliated against Plaintiff for airing safety grievances by engaging in conduct resulting in the termination of Plaintiffs' employment. (ECF No. 1 ¶¶ 67–77.)

*First*, the Court finds Plaintiff has alleged protected speech (*i.e.*, speech as a private citizen directed at a matter of public concern, here, Plaintiff's safety complaint regarding a public university's compliance with federal safety regulations), an adverse employment action (*i.e.*, employment termination), and that his allegedly protected speech motivated that adverse employment action by Campbell (*i.e.*, poor three-month performance review in response to safety complaints and placing Plaintiff on administrative leave) (*id*. ¶¶ 27, 71), Williams and Doherty (*i.e.*, poor six-month performance review in response to safety complaints) (*id*. ¶¶ 37–40), and Rentto (*i.e.*, did not review retaliatory evaluation process after CalOSHA complaint despite alleged knowledge and assigned responsibility to do so) (*id*. ¶¶ 29, 34).

*Second*, though Plaintiff has alleged Katz falsified the CalOSHA investigation and had revealed Plaintiff's identity to University Defendants as a CalOSHA safety complainant, the Court finds Plaintiff has failed to allege Katz had an "intent to chill speech" or that there was a nexus between Katz's actions and any such intent. *Arizona Students' Ass'n,* 824 F.3d at 867. The latter is required to assert retaliation claims against non-employer government actors. *Id*.

*Third*, Plaintiff has not alleged specific actions taken by remaining University Defendants (Garcia and De la Torre), or by remaining CalOSHA Defendants (Decker, Lee, and Hart), that were taken in retaliation against Plaintiff.

26cv2111

Thus, the Court **GRANTS IN PART** Plaintiff's cause of action for First Amendment retaliation (Count 1) to the extent Plaintiff alleges Campbell, Williams, Doherty, and Rentto.   However, the Court **DISMISSES IN PART, WITHOUT PREJUDICE** Plaintiff's First Amendment retaliation claims against Katz, Garcia, De la Torre, Decker, Lee, and Hart (Count 1).

**D.     Count 2: 42 U.S.C. § 1983; Substantive Due Process Violation Against Defendants Garcia, De la Torre, Campbell, Williams, Doherty, and Rentto in Their Individual Capacities**

"[D]eliberate indifference on the part of the responsible official, to the safety of employees in the presence of known danger, created by official conduct, is sufficient to establish a due process violation under Section 1983 for injury caused in part by a state created danger." *L.W. v. Grubbs*, 92 F.3d 894, 896 (9th Cir. 1996) (citing *L.W. v. Grubbs*, 974 F.2d 119, 122–23 (9th Cir. 1992) and *Wood v. Ostrander,* 879 F.2d 583, 588 (9th Cir.1989), *cert. denied,* 498 U.S. 938 (1990)).

"The 'danger creation' basis for a claim . . . necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *L.W.*, 974 F.2d at 121.  Plaintiffs can bring § 1983 claims against government employers based on employment issues, including cases concerning employees suing supervisors in § 1983 actions for workplace injuries. *See, e.g., L.W.*, 92 F.3d 894 (state created danger where employee with history of sexual assault was promoted to supervise plaintiff, leading to plaintiff being assaulted); *Figueroa v. United States*, 7 F.3d 1405 (9th Cir. 1993) (state created danger where defendants ordered plaintiff to clean up toxic chemical spill without advising them on proper safety procedures, leading to explosion injuring plaintiff).

However, substantive due process does not create a duty on the part of a government employer to provide its employees with a safe work environment. *Pauluk v. Clark Cnty. Health Dist.*, No. 207CV01681PMPLRL, 2008 WL 11335017, at *4 (D. Nev. June 30,

26cv2111

2008) (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126 (1992)). It also does not impose an affirmative obligation to ensure minimal levels of safety and security. *Collins*, 503 U.S. at 129. "Nor does it guarantee municipal employees a workplace that is free of unreasonable risks of harm." *Id.* An employer's failure to warn or train its employees about known hazards in the workplace does not support a substantive due process claim. *Id.* The Due Process Clause should not be interpreted "to impose federal duties that are analogous to those traditionally imposed by state tort law." *Id.* at 128.

Thus, to allege a claim for state created danger beyond failure to provide a safe work environment, plaintiffs must allege that defendant(s) had ordered plaintiffs to perform tasks that defendant(s) knew were unsafe. *See, e.g.*, *Figueroa*, 7 F.3d at 1409 (defendants' ordering the employees to clean up the spill constituted affirmative conduct, or a commission rather than an omission); *Sherwood v. Oklahoma County*, 42 Fed.Appx. 353, 356 (10th Cir. 2002) (defendant is independently aware of health risks of working with toxic paint in an unventilated area and ordered the employee to perform the tasks

Here, though Plaintiff states Plaintiff's job duties included working in areas some Defendants were aware could be non-compliant with state safety standards and that Plaintiff was penalized for refusing to perform those duties (ECF No. 1 ¶¶ 25, 27, 32, 37–38, 80–82), Plaintiff has not alleged that any particular Defendant ordered Plaintiff to conduct any specific hazardous task. Indeed, Plaintiff's allegations that "SDSU supervisors" had continued to assign Plaintiff certain tasks after Plaintiff raised safety concerns (*see* ECF No. 1 ¶ 80) ring closer to a claim that Defendants failed to maintain "minimal levels of safety and security," *Collins*, 503 U.S. at 129, than to a claim that Defendants' "affirmative conduct" placed Plaintiff in danger, *Figueroa*, 7 F.3d at 1409.

Thus, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's substantive due process cause of action based on a state created danger (Count 2). (ECF No. 1.)

**E.    Count 3: 42 U.S.C. § 1983; Procedural Due Process Violation Against Defendants Garcia, De la Torre, Campbell, Williams, Doherty, and Rentto in Their Individual Capacities**

- 9 -

To establish a procedural due process claim under Section 1983, a plaintiff must show: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011).

An employer can be held liable for a "procedural due process violation" when terminating an employee after the employer makes a stigmatizing charge that might seriously damage the employee's standing. *Campanelli*, 100 F.3d at 1478. "A public employee 'must be given an opportunity to refute' a stigmatizing charge." *Mustafa*, 157 F.3d at 1179.

Here, Plaintiff claims that University Defendants deprived Plaintiff of procedural due process and, on the basis of a stigmatizing charge of violent-threat, escorted Plaintiff off of SDSU's campus by SDSU police.

Regarding this incident, the Court finds that Plaintiff has alleged a "lack of process," *Guatay Christian Fellowship*, 670 F.3d at 983, since Plaintiff alleges Doherty had requested a meeting on the same day Plaintiff was escorted off-campus and since Doherty did not provide Plaintiff with a reason for the meeting prior to then (*see* ECF No. 1 ¶¶ 41–46). *Guzman v. County of Maui*, No. 21-CV-00202-DKW-RT, 2021 WL 4597656, at *7 (D. Haw. Oct. 6, 2021) ("[A]lthough Guzman undoubtedly received a hearing both before the Mayor and the Council, on the current record, he was provided with no meaningful *notice* of the reason for those hearings. Many undisputed facts lead to this conclusion.").

On the other hand, the Court finds that Plaintiff does not assert procedural due process claims based on a "stigmatizing charge" against Garcia, De la Torre, Campbell, Williams, and Rentto, given that Plaintiff has not alleged how any of those Defendants were involved in the particular incident above.

As such, the Court **GRANTS IN PART** Plaintiff's procedural due process cause of action based on a "stigmatizing charge" against Doherty.  However, the Court **DISMISSES IN PART, WITHOUT PREJUDICE** Plaintiff's procedural due process

- 10 -

26cv2111

cause of action based on a "stigmatizing charge" against remaining University Defendants (Garcia, De la Torre, Campbell, Williams, and Rentto).

**F.   Count 4: 42 U.S.C. § 1983 and First and Fourteenth Amendment Against Defendants Garcia and De la Torre in Their Official Capacities; Against Defendants Lee and Hart in Their Official Capacities; Prospective Relief**

Plaintiff seeks prospective relief on the basis that "[t]he ongoing presence of a false and stigmatizing charge in Plaintiff's official employment record, and the ongoing presence of a materially false official CalOSHA inspection record" constitute "continuing violations of Plaintiff's rights under the First and Fourteenth Amendments." (ECF No. 1 ¶ 100.)

However, the Court first finds that the ongoing presence of a stigmatizing claim on Plaintiff's employee record alone is not protected by the Fourteenth Amendment. "[T]he liberty interests protected by the Fourteenth Amendment are implicated only when the government's stigmatizing statements effectively exclude the employee completely from her chosen profession." *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 925 (9th Cir. 2013). Stigmatizing statements that merely cause "reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession" do not constitute a deprivation of liberty. *Stretten v. Wadsworth Veterans Hosp.,* 537 F.2d 361, 366 (9th Cir. 1976); *see also Roth v. Veteran's Admin.,* 856 F.2d 1401, 1411 (9th Cir. 1988), *overruled on other grounds by Garcetti v. Ceballos,* 547 U.S. 410 (2006). "[P]eople do not have liberty interests in a specific employer." *Llamas v. Butte Cmty. Coll. Dist.,* 238 F.3d 1123, 1128 (9th Cir. 2001). Here, Plaintiff has not alleged that the stigmatizing claims on Plaintiff's employee record have prevented Plaintiff from seeking future employment as a technician. For example, Plaintiff has not alleged that Plaintiff has attempted to apply for technician work and was rejected based on the relevant employee record.

26cv2111

Moreover, the Court finds Plaintiff does not have a constitutionally protected liberty interest in official government records, like "official CalOSHA inspection record[s]" (ECF No. 1 ¶ 100). *See Saldivar v. Wright*, No. 2:20-CV-02081-CAS-PD, 2021 WL 6618553, at *5 (C.D. Cal. Sept. 8, 2021) ("There is no stand-alone constitutional right to, or liberty interest, in accurate government records."); *see also Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) ("[F]abricated evidence does not give rise to a claim if the plaintiff cannot 'show the fabrication actually injured her in some way.' ").

Thus, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's cause of action for prospective relief (Count 4). (ECF No. 1.)

### G. Leave to Amend

Given Plaintiff's *pro se* status, the Court grants him leave to amend his complaint. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.' ") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

### IV. CONCLUSION

For the reasons above, the Court **GRANTS** Plaintiff's motion to proceed IFP. (ECF No. 8.) Moreover, the Court **GRANTS IN PART** and **DISMISSES IN PART, WITHOUT PREJUDICE** Plaintiff's complaint. (ECF No. 1.)

More specifically, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's substantive due process cause of action based on a state created danger (Count 2) and Plaintiff's cause of action for prospective relief (Count 4).

Next, the Court **GRANTS IN PART** Plaintiff's cause of action for First Amendment retaliation (Count 1) to the extent Plaintiff alleges Campbell, Williams, Doherty, and Rentto. On the other hand, the Court **DISMISSES IN PART, WITHOUT PREJUDICE** Plaintiff's First Amendment retaliation claims against Katz, Garcia, De la Torre, Decker, Lee, and Hart (Count 1).

Lastly, the Court **GRANTS IN PART** Plaintiff's procedural due process cause of

26cv2111

action based on a "stigmatizing charge" against Doherty (Count 3).  However, the Court **DISMISSES IN PART, WITHOUT PREJUDICE** Plaintiff's procedural due process cause of action based on a "stigmatizing charge" against Garcia, De la Torre, Campbell, Williams, and Rentto (Count 3).

For the dismissed claims, Plaintiff is **GRANTED LEAVE** to file amended claims on or before **June 10, 2026**.

**IT IS SO ORDERED.**

**DATED: May 27, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

26cv2111