**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTT DESROSIERS,<br>Plaintiff,<br>v.<br>DR. MILDRED GARCIA, *et al.*,<br>Defendants. | Case No. 26-cv-02111-BAS-DEB<br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 32)** |

Defendants Mildred Garcia, Kirk Campbell, Nathan Doherty, and Jessica Rentto move to dismiss the claims asserted against them in Plaintiff Scott Desrosiers's First Amended Complaint, including on qualified immunity grounds ("Motion"). (ECF No. 32.) The Court finds the Motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1.d.1. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion. (ECF No. 32.)

## I. BACKGROUND

Plaintiff Scott Desrosiers is a former San Diego State University ("SDSU") employee who, beginning in May 2023, maintained electro-mechanical equipment in laboratory facilities and classrooms. (First Am. Compl. ("FAC") ¶¶ 4, 16, ECF No. 12.)

While employed, Plaintiff observed and documented alleged California Division of Occupational Safety and Health ("CalOSHA") safety code violations in his assigned work areas, including improper chemical storage and unpermitted cryogenic vessels of liquid argon, with which he had a "near miss" asphyxiation incident in his first month. (*Id.* ¶ 19.) Plaintiff raised these concerns with SDSU administration and filed a formal CalOSHA complaint. (*Id.* ¶¶ 20, 25–26.) Plaintiff alleges that the violations he identified fall within the same categories of deficiencies that a 2018 California State Auditor report found across California State University campuses, including at SDSU. (*Id.* ¶¶ 23, 36, 41.)

As best the Court can discern, Plaintiff alleges facts against each of the four Defendants who bring the Motion (collectively, "Moving Defendants") as follows:

**A. Moving Defendants**

Defendant Kirk Campbell ("Campbell") was Plaintiff's direct supervisor. (FAC ¶ 7.) At Plaintiff's three-month evaluation, which gave him negative marks "for declining to accept Defendant Campbell's assertion that there were no safety concerns," Campbell prohibited Plaintiff from raising safety concerns with students, coworkers, or administrators. (*Id.* ¶¶ 27–28.) From October 2023 through March 21, 2024, Campbell continued to assign Plaintiff—whose primary workspace was "a shared office in a safe location"—to work in the laboratory spaces Plaintiff had complained about, despite Campbell's "direct personal knowledge" of the unpermitted liquid argon, the near-miss incident, chemical storage violations, and uninspected eyewash stations and emergency showers. (*Id.* ¶¶ 37, 90–91.) Plaintiff alleges that he suffered "exposure to documented serious safety hazards, near-daily migraine headaches caused by conditions in the work environment, emotional distress, and economic loss." (*Id.* ¶ 95.)

Defendant Mildred Garcia ("Garcia") is the Chancellor of the California State University ("CSU") system. (FAC ¶ 5.) Plaintiff filed a whistleblower retaliation complaint under CSU Executive Order 1116 (the "EO 1116 complaint") directly with the CSU Chancellor's Office. (*Id.* ¶ 29.) The Chancellor's Office declined independent review, appointed Defendant Jessica Rentto ("Rentto") as investigator, and told Plaintiff

that if he wanted the EO 1116 complaint to serve as his rebuttal to the three-month evaluation, he had to give it to Campbell, which he did in October 2023. (*Id.* ¶¶ 30–32.) Plaintiff alleges that these decisions were made "under Defendant Garcia's authority as Chancellor." (*Id.* ¶¶ 30, 32, 84.)

Rentto is SDSU's Associate Vice President of Business and Finance. (FAC ¶ 13.) In December 2023, Rentto met with Plaintiff with "actual knowledge" of his CalOSHA complaint and said she would look into the safety violations, but she "did not have time to address" the retaliation he reported. (*Id.* ¶ 34.) Rentto issued no finding while Plaintiff remained employed and denied the EO 1116 complaint months after his termination. (*Id.* ¶ 35.)

Defendant Nathan Doherty ("Doherty") is a Labor Relations Manager at SDSU. (FAC ¶ 9.) On March 20, 2024, Doherty and Defendant Terry Williams ("Williams") met with Plaintiff about his six-month evaluation, which Campbell had prepared and Doherty and Williams had approved, and in which each adverse mark allegedly corresponded to Plaintiff raising safety concerns or refusing unsafe work. (*Id.* ¶¶ 39–40, 92–93.) Plaintiff stated that the violations he had identified were the same categories the State Auditor had documented, and that he would file a civil rights action under 42 U.S.C. § 1983 if SDSU did not correct the violations and the evaluation. (*Id.* ¶ 41.)

The next day, Doherty called Plaintiff to a meeting, without disclosing its subject; Campbell and Williams coordinated the meeting. (FAC ¶ 43.) At the meeting, Doherty confronted Plaintiff with an allegation that he had threatened a coworker with a deadly weapon—with an SDSU police officer and Plaintiff's two union representatives present. (*Id.* ¶¶ 43, 47, 104.) Campbell allegedly "initiated and directed the process." (*Id.* ¶ 103.) The allegation arose when a professor indicated he had no time to wait for a shipping-container inspection, and Plaintiff produced a multi-tool from his pocket and said, "That's why I carry this." (*Id.* ¶ 48.) The professor did not characterize the conduct as threatening, but a worker in an adjacent room reportedly did. (*Id.*) Plaintiff was placed on

administrative leave and escorted by uniformed campus police "across the length of the campus before colleagues." (*Id.* ¶¶ 42, 49, 99.)

Meanwhile, on April 5, 2024, the CalOSHA inspector investigating Plaintiff's complaint, Defendant Mark Katz, disclosed Plaintiff's identity as the complainant to two SDSU Environmental Health and Safety employees. (FAC ¶¶ 11, 35, 50, 70.) Six days later, on April 11, 2024, Campbell, Doherty, and Williams terminated Plaintiff for "unprofessional, disruptive, threatening behavior," without pre-termination notice or a hearing. (*Id.* ¶¶ 52, 55.) Plaintiff alleges that his personnel records reflect the charge. (*Id.* ¶¶ 112, 117.) No name-clearing hearing has been provided. (*Id.* ¶ 107.)

### B. Procedural History

Plaintiff, proceeding pro se, filed this action on April 2, 2026, and filed the operative FAC on June 1, 2026. (ECF Nos. 1, 12.) Plaintiff asserts the following claims against Moving Defendants: (1) First Amendment retaliation against all Moving Defendants (Count 1); (2) substantive due process (state-created danger) against most Moving Defendants (Campbell, Doherty, and Rentto) (Count 2); and (3) procedural due process (stigma-plus) against most Moving Defendants (Campbell, Doherty, and Rentto) (Count 3). (ECF No. 12.) Moving Defendants move to dismiss each of these claims under Rule 12(b)(6), including on qualified immunity grounds. (ECF No. 32.) The Motion is fully briefed. (ECF Nos. 34, 43.)

## II. LEGAL STANDARD

Rule 12(b)(6) allows a party to move to dismiss based on the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III. ANALYSIS

### A. Qualified Immunity

Moving Defendants move to dismiss the claims asserted against them on grounds of qualified immunity. (Mem. in Supp. of Mot. to Dismiss ("MTD") 10:2–14:1, ECF No. 32-1.)

A government official is entitled to qualified immunity from a claim for damages unless the plaintiff pleads facts showing (1) "a violation of a constitutional right," and (2) that the right was "clearly established at the time of [the] defendant's alleged misconduct." *Evans v. Skolnik*, 997 F.3d 1060, 1064 (9th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

Under the second prong, a government official "violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 742. "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Thus, cases decided after the relevant conduct are "of no use in the clearly established inquiry." *Id.* at 200 n.4.

Courts may address the two prongs in any order. *Evans*, 997 F.3d at 1064–66 ("In general, courts should think hard, and then think hard again, before turning small cases into large ones") (internal quotations omitted). Thus, the Court begins by analyzing Plaintiff's claims under the second prong.

#### 1. First Amendment Retaliation (Count 1)

The Court finds that, at the time of Moving Defendants' alleged misconduct, First Amendment protections against workplace retaliation were clearly established—militating against finding qualified immunity. In 1968, the Supreme Court held that the First Amendment protects employee speech on matters of "legitimate public concern." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571 (1968). The Ninth Circuit reiterated in 2003 that "the constitutional protection of employee speech and a First Amendment cause of action for retaliation against protected speech were clearly established." *Coszalter v. City of Salem*, 320 F.3d 968, 979 (9th Cir. 2003).

Related to Plaintiff's claims, the Ninth Circuit has held that complaints to outside agencies were protected citizen speech that can provide the basis for a First Amendment retaliation claim. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1074, 1077–78 (9th Cir. 2013) (en banc) (finding that a police detective who reported fellow officers' physical abuse of suspects, and his superiors' threats and harassment, to an outside agency engaged in protected speech because he "spoke outside the chain of command and, indeed, to an outside agency altogether"). Additionally, in finding that the plaintiff's sworn testimony at a former employee's corruption trials was protected citizen speech, the Supreme Court has made clear that "the critical question is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014) (cleaned up); *cf. Entler v. Gregoire*, 872 F.3d 1031, 1039–40 (9th Cir. 2017) (holding, in the prison context, that threats to sue are protected conduct).

Here, Plaintiff alleges that Campbell and Doherty retaliated against him for his protected speech (*i.e.*, filing a complaint with CalOSHA and threatening to sue SDSU if it did not correct the safety violations he identified) by placing him on leave and eventually terminating his employment. (FAC ¶¶ 26, 41, 76–78, 81.) Moving Defendants argue that Plaintiff must identify precedent addressing the specific circumstances here—that is, whether a reasonable official would know it was unconstitutional to terminate an employee, or have him walked off campus, after "a co-worker had reported feeling threatened by a

colleague's display of a blade." (Defs.' Reply in Supp. of MTD ("Reply") 3:4–9, ECF No. 43; *see* MTD 12:16–19, ECF No. 32-1.)

Moving Defendants' framing assumes the truth of their own explanation for their conduct. At this stage, the Court must accept Plaintiff's allegations that the threatening-behavior charge was pretextual and that Campbell and Doherty acted because of his protected speech (*e.g.,* CalOSHA complaint and threat to sue) (FAC ¶¶ 78–81, 98). *See Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) ("[W]hen a district court dismisses a complaint for failure to state a claim based on a qualified immunity defense, we consider whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights.").

Thus, the question is whether it was clearly established in 2024 that a public employer may not place an employee on leave and terminate him because he threatened to sue over workplace-safety violations of public concern. *Pickering*, *Dahlia*, and *Lane* indicate that it was. *Pickering*, 391 U.S. at 571; *Dahlia*, 735 F.3d at 1074, 1077–78; *Lane*, 573 U.S. at 240. Since Plaintiff's allegations are based on well-established First Amendment protections, the Court finds that Campbell and Doherty's qualified immunity defense does not bar Plaintiff's Count 1 claim against them.[1]

However, with respect to Garcia and Rentto, the claim against them fails on other grounds. *See infra* § III.B.2.

**2. Substantive Due Process (State-Created Danger) Against Campbell, Doherty, and Rentto (Count 2)**

The Court finds that, at the time of Campbell, Doherty, and Rentto's alleged misconduct, substantive due process rights based on state-created danger were clearly established under certain circumstances—militating against finding qualified immunity.

[1] Additionally, because Plaintiff plausibly alleges that Campbell and Doherty violated his First Amendment rights, *see infra* § III.B, Court finds that the first prong of qualified immunity does not bar Plaintiff's Count 1 claim against them.

However, those circumstances are not present here—militating towards finding qualified immunity.

Under the state-created danger doctrine, "although state employers have no constitutional duty to provide their employees with a safe working environment, . . . [they may be held] liable when they affirmatively, and with deliberate indifference, create or expose their employees to a dangerous working environment." *Polanco v. Diaz*, 76 F.4th 918, 926 (9th Cir. 2023) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992)). The Due Process Clause does not, however, "guarantee municipal employees a workplace that is free of unreasonable risks of harm." *Collins*, 503 U.S. at 129. And whether the right at issue was clearly established must be assessed with specificity. Courts may not "define clearly established law at a high level of generality," and existing precedent must "squarely govern[]" the specific facts at issue. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (cleaned up).

The Ninth Circuit decisions applying the doctrine in the workplace share common features. In each, a state employer affirmatively placed an employee in contact with a known danger that posed a risk of death or serious bodily harm, and the danger caused exactly that harm. *See L.W. v. Grubbs*, 974 F.2d 119, 121–22 (9th Cir. 1992) (nurse assigned to work alone with an inmate known to be a violent sex offender, who then assaulted her); *Pauluk v. Savage*, 836 F.3d 1117, 1125 (9th Cir. 2016) (employee transferred, over his objection, to a building contaminated with toxic mold, who later died); *Polanco*, 76 F.4th at 931 (correctional officer who died of COVID-19 after officials transferred infected inmates into his facility). Even in *Pauluk*, the Ninth Circuit held that the defendants were entitled to qualified immunity because the right had not been clearly established at the time. *Pauluk*, 836 F.3d at 1125–26.

The circumstances alleged here differ in each respect:

1. **Campbell did not transfer Plaintiff into a new environment.** He assigned Plaintiff to work in the laboratory facilities and classrooms Plaintiff was hired to maintain. (FAC ¶¶ 16, 37, 90–91.)

2. **Doherty and Rentto did not affirmatively place Plaintiff in contact with harm**. Doherty is alleged only to have reviewed and approved the six-month performance evaluation (FAC ¶ 93), and Rentto is alleged only to have "deliberate[ly] fail[ed] to act" (*id.* ¶ 94). Although Plaintiff contends that Doherty "ratified Campbell's affirmative conduct" (FAC ¶ 93), Campbell's own assignments are distinguishable from the conduct at issue in *Grubbs*, *Pauluk*, and *Polanco* as discussed above, so ratifying that conduct could not have violated clearly established law.
3. **The near-miss incident predates the assignments at issue.** The only potentially lethal hazard Plaintiff identifies, the unpermitted argon, caused a near-miss incident in his first month of employment, before the assignments at issue. Plaintiff does not allege that it injured him afterward. (FAC ¶¶ 19, 37.) The remaining hazards, such as improper chemical storage and uninspected eyewash stations and emergency showers, are the kind of workplace-safety deficiencies that *Collins* held do not give rise to a due process claim. *See* 503 U.S. at 128–29.
4. **Plaintiff does not allege a serious injury.** The injuries Plaintiff alleges (migraines, emotional distress, and economic loss) are not the death or serious bodily injury at issue in *Grubbs*, *Pauluk*, and *Polanco*. *Grubbs*, 974 F.2d at 121–22; *Pauluk*, 836 F.3d at 1125; *Polanco*, 76 F.4th at 931. Plaintiff attributes them generally to "conditions in the work environment." (FAC ¶ 95.)

Plaintiff's authorities do not fill this gap. (Pl.'s Opp'n to MTD ("Opp.") 31:14–19, ECF No. 34.) *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006), and *Patel v. Kent Sch. Dist.*, 648 F.3d 965 (9th Cir. 2011), arose outside the workplace and state the doctrine's elements only at a general level.

Plaintiff additionally contends that *Pauluk* "clearly established that a supervisor's knowing, continued assignment to a hazardous condition states a cognizable claim." (Opp. 31:16–18.) But *Pauluk* granted the defendants qualified immunity, and it involved an

employee's involuntary transfer to a different building and his eventual death—circumstances not alleged here. *Pauluk*, 836 F.3d at 1125. Moreover, Plaintiff does not respond to Moving Defendants' argument that clearly established law must be defined with specificity. (*See* Reply 2:13–3:13.)

Neither Plaintiff nor the Court has identified any decision holding that a supervisor (here, Campbell) violates due process by assigning an employee (here, Plaintiff) to perform his ordinary duties in workspaces containing safety-code violations, where the employee does not allege a serious injury caused by those violations. *See Sanchez v. City of Fresno*, No. 1:12-CV-00428-LJO, 2014 WL 2042058, at *10 (E.D. Cal. May 16, 2014) (collecting cases) (noting that while *Campbell v. Wash. Dep't of Soc. & Health Servs.*, 671 F.3d 837, 845 (9th Cir. 2011), stated a state actor who "exposes" an individual to a danger may be liable, the court is "unable to locate a single example of a court imposing danger creation liability based upon anything other than *actual, serious* bodily injury." (emphasis in original)); *Fitzpatrick v. Little*, No. 1:22-CV-00162-DCN, 2023 WL 129815, at *15 (D. Idaho Jan. 9, 2023) ("Ninth Circuit precedent . . . suggests that an actual physical injury is required.") (citing *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019); *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018); *Kennedy*, 439 F.3d at 1067).

Thus, the Court finds that Campbell's alleged conduct did not violate clearly established law. And because the claims against Doherty and Rentto rest on their alleged ratification of, or acquiescence in, Campbell's assignments (FAC ¶¶ 93–94), their alleged conduct did not violate clearly established law either.

The Court is mindful that, on a motion to dismiss, qualified immunity is appropriate only if the complaint itself establishes the defense. *Keates*, 883 F.3d at 1235. But even accepting Plaintiff's allegations as true, no existing precedent would have placed it "beyond debate" in 2023 and 2024 that Campbell, Doherty, and Rentto's conduct was unconstitutional. *al-Kidd*, 563 U.S. at 741. Accordingly, Campbell, Doherty, and Rentto are entitled to qualified immunity on Count 2. Because the Court resolves Count 2 on this

basis, it does not reach whether Plaintiff has plausibly alleged a constitutional violation or Moving Defendants' remaining arguments as to this claim. (MTD 19:18–21:25, ECF No. 32-1.)

Thus, the Court **GRANTS** the Motion as to Count 2 and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Count 2 claim against Campbell, Doherty, and Rentto.

**3. Procedural Due Process (Stigmatizing Charges) Against Campbell, Doherty, and Rentto (Count 3)**

The Court finds that, at the time of Campbell, Doherty, and Rentto's alleged misconduct, procedural due process rights protecting against *only* a *public* disclosure of stigmatizing charges, absent a name-clearing hearing, were clearly established. *See Cox v. Roskelley*, 359 F.3d 1105, 1112–13 (9th Cir. 2004) (finding a "reasonable public official would have been aware" of the right against public disclosure of stigmatizing charges absent a name-clearing hearing). However, for the right to be "clearly established," a "publication" must have occurred. *Compare id.* (finding a procedural due process right was clearly established where state law mandated public disclosure of employment personnel files) *with Boggs v. Hoover*, 506 F. App'x 668, 669 (9th Cir. 2013) (finding plaintiff's procedural due process right was *not* clearly established because "Oregon law is ambiguous as to whether this sequence of events made Boggs's personnel file public and therefore whether 'publication' had occurred for Fourteenth Amendment due process purposes."). Put differently, where there is a lack of publication, procedural due process rights for stigmatizing charges are *not* clearly established. *Boggs*, 506 F. App'x at 669.

Here, Plaintiff claims that Campbell and Doherty falsely accused him of threatening a coworker with a deadly weapon and terminated him on that basis without notice or a hearing. Plaintiff claims that they publicly attached that stigma to him by having uniformed campus police escort him "across the length of the campus before colleagues," and that he has never received a name-clearing hearing. (FAC ¶¶ 52, 55, 98–99, 103–04, 107.) However, the Court cannot locate any case law suggesting that a public police escort

constitutes a "publication" for purposes of procedural due process rights protecting against a stigmatizing charge.

In addition, Plaintiff claims that Doherty stated the charges against Plaintiff in a meeting with an officer and union representatives present. (FAC ¶¶ 43, 47, 104.) However, courts have found that disclosure of stigmatizing information internally within or between government agencies is not a "public" disclosure. *See Wenger v. Monroe*, 282 F.3d 1068, 1075 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 17, 2002) (information disclosed between branches of the military was not "public"); *Millman v. Inglish*, 461 Fed. App'x 627, 628 (9th Cir. 2011) (notifying other public agencies of fraud allegations was not a public disclosure); *Reyes v. City of Pico Rivera*, 370 Fed. App'x 844, 844 (9th Cir. 2010) (disclosure of stigmatizing report to two other city officials did not constitute publication because there was no public disclosure).

Moreover, Plaintiff claims that the charge against him appears in his personnel records—to the fault of Rentto. (FAC ¶¶ 106, 112, 117.) However, unlike Washington in *Cox*, California does not mandate public disclosure of stigmatizing information in an employee personnel file. 359 F.3d at 1112. More specifically, California exempts personnel files from public disclosure where disclosure would be an unwarranted invasion of privacy, and requires disclosure of disciplinary records only after case-specific balancing. *See* Cal. Gov't Code § 7927.700; *Bakersfield City Sch. Dist. v. Superior Ct.*, 118 Cal. App. 4th 1041, 1046 (2004). Plaintiff also does not allege that any non-government employee requested or received Plaintiff's file.

Since Plaintiff has not alleged "publication" within the meaning of the doctrine establishing procedural due process rights against stigmatizing charges, the Court finds that Plaintiff's rights are not "clearly established" and Moving Defendants' qualified immunity defense bars Plaintiff's Count 3 claim.

Thus, the Court **GRANTS** the Motion as to Count 3 on qualified immunity grounds and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Count 3 claim against Campbell, Doherty, and Rentto.

Because qualified immunity bars Count 3, the Court does not reach Moving Defendants' remaining arguments that Plaintiff fails to allege that the charge was false or that he was denied required process. (MTD 23:17–24:19.)

**B. First Amendment Retaliation Against Moving Defendants (Count 1)**

"In order to state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment action." *Coszalter*, 320 F.3d at 973.

**1. Protected Speech**

First, the Court considers whether Plaintiff engaged in protected speech. *Id.* at 973. Here, Plaintiff alleges that he engaged in protected speech by: (1) reporting safety violations to SDSU administration and continuing to raise them after Campbell told him to stop; (2) filing a complaint with CalOSHA; (3) filing an EO 1116 whistleblower retaliation complaint with the CSU Chancellor's Office; and (4) stating at the March 20, 2024 meeting that he would file a civil rights action under 42 U.S.C. § 1983 if SDSU did not correct the violations and his evaluation. (FAC ¶¶ 20–21, 25–29, 41, 76, 78.)

Moving Defendants concede that Plaintiff's external CalOSHA complaint is "arguably protected." (MTD 2:22–23.) And Plaintiff's threat to file a federal civil rights action was not part of his duties as an electro-mechanical technician; it was a statement that he would take his complaints outside his chain of command and into federal court. (FAC ¶¶ 16, 41.) *See Lane*, 573 U.S. at 240; *Dahlia*, 735 F.3d at 1074–75; *Freitag v. Ayers*, 468 F.3d 528, 545–46 (9th Cir. 2006). Because Plaintiff's surviving claims against Campbell and Doherty rest on his litigation threat, *see infra* § III.B.3, the Court finds that Plaintiff has plausibly alleged that he engaged in protected speech related to Campbell and Doherty's alleged adverse employment actions, discussed *infra* § III.B.2.

Moving Defendants argue that speech allegedly giving rise to Garcia and Rentto's purported retaliation—Plaintiff's internal safety reports and EO 1116 complaint—arose

from Plaintiff's job duties and were made through workplace channels, and are therefore unprotected employee speech. (MTD 14:11–15:27; Reply 4:5–5:19.) As discussed *supra* § III.A.1, to be protected, speech that deals with "complaints over internal office affairs" is not protected when it is not relevant to the public's evaluation of a governmental agency's performance. *Connick v. Myers*, 461 U.S. 138, 149 (1983); *Nunez v. Davis*, 169 F.3d 1222, 1227 (9th Cir. 1999).

On the other hand, a public employee's speech addresses a matter of public concern when it "can be fairly considered as relating to any matter of political, social, or other concern to the community." *Voigt v. Savell*, 70 F.3d 1552, 1559 (9th Cir. 1995). Because all of Plaintiff's complaints concern the same categories of deficiencies in his public employer's handling of hazardous materials and laboratory safety that a California State Auditor report publicly identified across CSU campuses, and at SDSU specifically (FAC ¶¶ 19, 23, 36, 41), his Plaintiff's complaints could qualify as protected citizen speech.

Nonetheless, even assuming the speech underlying Plaintiff's Count 1 claims against Garcia and Rentto is protected, the Court finds those claims fail to plead the second required element of First Amendment retaliation: adverse employment action, discussed *infra* § III.B.2.

**2. Adverse Employment Action**

Second, the Court considers whether Moving Defendants took "adverse employment action[s]" against Plaintiff. Moving Defendants allegedly retaliated against Plaintiff by: (1) placing him on administrative leave on March 21, 2024, the day after he threatened to sue (Campbell and Doherty); (2) terminating him on April 11, 2024, six days after CalOSHA identified him as the complainant (Campbell and Doherty); (3) in October 2023, mishandling his EO 1116 complaint and requiring him to disclose it to Campbell (Garcia); and (4) failing to act on that complaint while he remained employed (Rentto). (FAC ¶¶ 30–35, 41–43, 50, 52, 78, 81, 84.)

As for Campbell and Doherty, this Court agrees with other courts finding that placing plaintiffs on administrative leave and terminating plaintiffs' employment constitute retaliatory acts, and finds that the first and second acts listed above constitute "adverse employment actions." *See Dahlia*, 735 F.3d at 1078–79 ("[U]nder some circumstances, placement on administrative leave can constitute an adverse employment action."); *Coszalter*, 320 F.3d at 976 (explaining that an adverse employment action is one reasonably likely to deter protected speech).

As for Rentto, the Court agrees with other courts that "[a]n inadequate response to a complaint is not retaliation," and finds that the fourth act listed above—Rentto's alleged failure to act on Plaintiff's EO 1116 complaint—merely alleges such a response. *Garcia v. Chandler-Gilbert Cmty. Coll.*, No. CV-22-02169-PHX-JJT, 2026 WL 926049, at *10 (D. Ariz. Apr. 6, 2026) (citing *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721–22 (2d Cir. 2010)).

As for Garcia, even assuming that requiring Plaintiff to disclose his EO 1116 complaint to Campbell could constitute an adverse employment action, *see Coszalter*, 320 F.3d at 976, Plaintiff does not allege that Garcia personally participated in that decision or any other decision regarding Plaintiff's complaint. Plaintiff alleges only that the Chancellor's Office acted "under Defendant Garcia's authority as Chancellor." (FAC ¶¶ 30, 32, 84.) But "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff's reliance on *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), does not save his claim against Garcia or Rentto. (*See* Opp. 20:4–21:11.) A supervisor is liable for a First Amendment violation only if she acted with the requisite retaliatory purpose, *see Iqbal*, 556 U.S. at 677, and Plaintiff fails to allege any facts suggesting that Garcia or Rentto acted because of Plaintiff's speech. (*See* Reply 6:27–8:8.) Because Count 1 fails as to Garcia on this basis, the Court does not reach Moving Defendants' argument that the claim against her is time-barred. (MTD 19:3–17; Reply 8:9–28.)

**3. Causation or "Substantial or Motivating" Factor**

Having dismissed Plaintiff's Count 1 claims against Garcia and Rentto, the Court proceeds to evaluate whether Plaintiff's protected speech was a "substantial or motivating" factor for Campbell and Doherty's placement of Plaintiff on administrative leave or termination. *Coszalter*, 320 F.3d at 973.

Courts have found that temporal proximity between plaintiff's speech and the adverse employment action, combined with awareness by the defendant of the speech, militates toward finding a "substantial or motivating" factor. *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751–52 (9th Cir. 2001) (quoting *Schwartzman v. Valenzuela*, 846 F.2d 1209, 1212 (9th Cir. 1988)); *see also Biba v. Wells Fargo & Co.*, No. C 09-3249 MEJ, 2010 WL 4942559, at *18 (N.D. Cal. Nov. 10, 2010) (finding against causation based on defendants' lack of awareness of plaintiff's protected speech, despite temporal proximity). In addition, an employer's expressed opposition to the plaintiff's speech can establish that such speech was a "substantial or motivating" factor for retaliation. *See Keyser*, 265 F.3d at 751–52 (finding a plaintiff can also offer direct evidence to show the employer expressed opposition to the speech either to the employee or others to establish causation).

The Court finds that Plaintiff's allegation that Campbell and Doherty placed Plaintiff on administrative leave less than twenty-four hours after Doherty heard Plaintiff's litigation threat is sufficient to show causation. Plaintiff allegedly threatened to sue Defendants at a meeting on March 20, 2024 (attended by Doherty and Williams) about Plaintiff's six-month evaluation (authored by Campbell). (FAC ¶¶ 39, 92–93.) Further, Campbell and Williams coordinated the March 21 meeting—where Plaintiff was placed on administrative leave. (*Id.* ¶ 43.) Thus, because Campbell coordinated the March 21 meeting with Williams, who heard Plaintiff's threat the day before, and construing the facts in favor of Plaintiff, the Court finds that Plaintiff has sufficiently alleged Campbell's awareness of Plaintiff's threat.

Relatedly, Plaintiff has alleged that both Campbell and Doherty had expressed opposition to Plaintiff's safety concerns—which is the underlying basis for Plaintiff's threat to sue. *Keyser*, 265 F.3d at 751–52. Campbell allegedly gave Plaintiff negative marks in his three-month evaluation "for declining to accept Defendant Campbell's assertion that there were no safety concerns." (FAC ¶ 27.) Doherty allegedly "did not identify any adverse mark based on conduct unrelated to safety advocacy" during the March 20, 2024 meeting. (*Id.* ¶ 40.)

Moving Defendants contend that temporal proximity alone cannot establish causation, and that the FAC itself supplies an equally likely, non-retaliatory explanation for Plaintiff's administrative leave and termination. (MTD 16:16–17:19; Reply 5:20–6:26 (citing *Kama v. Mayorkas*, 107 F.4th 1054, 1060–61 (9th Cir. 2024)).) Namely, Plaintiff alleges that after a professor indicated he had no time to wait for a shipping-container inspection, Plaintiff produced a multi-tool from his pocket and said, "That's why I carry this," and a worker in an adjacent room reportedly perceived the conduct as threatening. (FAC ¶ 48.)

However, Moving Defendants omit Plaintiff's allegation that the professor to whom Plaintiff's remark was directed did not view it as threatening. They also omit Plaintiff's claim that Campbell and Doherty placed Plaintiff on administrative leave and terminated him in response to his litigation threat rather than the multi-tool incident. (FAC ¶¶ 48, 78, 80, 98.) Evidence that an employer's proffered explanation is false or pretextual is itself evidence of retaliatory motive. *Coszalter*, 320 F.3d at 977. Moreover, Plaintiff does not allege when the multi-tool incident occurred, so the Court cannot conclude from the face of the FAC that the incident, rather than Plaintiff's speech, prompted the March 21 meeting.

Next, the Court agrees with Moving Defendants that Plaintiff's allegation that Campbell and Doherty terminated Plaintiff on April 11, 2024, six days after CalOSHA identified him as the complainant (FAC ¶¶ 50, 52, 81), is alone insufficient to show causation. (*See* MTD 16:16–17:11.) Plaintiff does not allege that either Campbell or Doherty was aware of the CalOSHA disclosure, which went to SDSU's Environmental

Health and Safety staff (FAC ¶¶ 35, 50, 70). *See Biba*, 2010 WL 4942559, at *18. Nonetheless, reading Plaintiff's allegations liberally, the Court finds that Plaintiff's termination may be tied instead to Plaintiff's threat to sue during the March 20 meeting. The stated reason for the termination—Plaintiff's "unprofessional, disruptive, threatening behavior" (FAC ¶ 52)—rests on the same charge Doherty leveled when Plaintiff was placed on administrative leave (*id.* ¶ 104). Moreover, though Plaintiff describes his termination as directly following CalOSHA's disclosure (*id.* ¶¶ 52, 81), he also characterizes the termination more broadly as the culmination of Defendants' retaliation for all of his complaints (*id.* ¶¶ 2, 76, 78, 81, 98).

In addition, the Ninth Circuit recently found that "[w]hether an officer was motivated by discriminatory animus 'involves questions of fact that normally should be left for trial.' " *Cheairs v. City of Seattle*, 145 F.4th 1233, 1246 (9th Cir. 2025) (quoting *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020)).

* * *

Thus, insofar as Plaintiff's First Amendment retaliation claim is based on Campbell and Doherty's placement of him on administrative leave or termination of his employment, the Court **DENIES** Moving Defendants' Motion regarding Plaintiff's First Amendment retaliation claim (Count 1). However, because Plaintiff fails to allege an adverse employment action by Rentto or Garcia's personal participation, *supra* § III.B.2, the Court **GRANTS** Moving Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's First Amendment retaliation claim as to Garcia and Rentto (Count 1).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Moving Defendants' (Mildred Garcia, Kirk Campbell, Nathan Doherty, and Jessica Rentto) Motion to Dismiss (ECF No. 32) as follows:

1. The Motion is **DENIED** as to Plaintiff's First Amendment retaliation claim (Count 1) against Campbell and Doherty;

2. The Motion is **GRANTED** as to Count 1 against Garcia and Rentto, and Count 1 is **DISMISSED WITHOUT PREJUDICE** as to them;

3. The Motion is **GRANTED** as to Plaintiff's substantive due process claim against Moving Defendants named in Count 2 (including Campbell, Doherty, and Rentto), and Count 2 is **DISMISSED WITHOUT PREJUDICE** as to those Defendants; and

4. The Motion is **GRANTED** as to Plaintiff's procedural due process claim against Moving Defendants named in Count 3 (including Campbell, Doherty, and Rentto), and Count 3 is **DISMISSED WITHOUT PREJUDICE** as to those Defendants.

As to the dismissed claims, the Court **GRANTS** Plaintiff leave to amend. Plaintiff must file his Second Amended Complaint by **November 17, 2026**.

**IT IS SO ORDERED.**

**DATED: October 27, 2026**

Cynthia Bashant

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**